[Cite as *State v. Baker*, 2026-Ohio-2776.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2025-T-0080 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| JOHN G. BAKER, | |
| Defendant-Appellant. | Trial Court No. 2025 CR 00238 |

## OPINION AND JUDGMENT ENTRY

Decided: July 20, 2026
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Charles L. Morrow*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*William C. Livingston*, Berkman, Gordon, Murray & Devan, 55 Public Square, Suite 2200, Cleveland, OH 44113 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, John Baker ("Baker"), appeals his convictions from the Trumbull County Court of Common Pleas for kidnapping and felonious assault. Baker raises two assignments of error asserting that the plaintiff-appellee, the State of Ohio ("State"), failed to present sufficient evidence to support his convictions and that the trial judge improperly considered his silence in violation of his Fifth Amendment right against self-incrimination.

{¶2} Upon review, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the offenses

proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). In other words, if believed, the evidence presented against Baker would support a conviction on each of the offenses. Additionally, although the trial court erred by commenting on Baker's silence at sentencing, as Baker has not demonstrated prejudice, we hold that the error was harmless.

{¶3} Accordingly, we affirm the judgment of the Trumbull County Court of Common Pleas.

**Substantive and Procedural Facts**

{¶4} On April 16, 2025, a Trumbull County Grand Jury indicted Baker on one count of rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2) and (B) ("Count 1"); one count of kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(4) and (C)(1) ("Count 2"); and one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2) and (D)(1)(a) ("Count 3").

{¶5} Baker pleaded not guilty to the indicted charges and proceeded to a jury trial. The following testimony was presented to the jury.

{¶6} On or about February 14, 2025, the victim, R.P., was shopping at a Giant Eagle grocery store when she bumped into something with her cart. Baker, who was also at Giant Eagle, approached R.P. and the two exchanged pleasantries. During the conversation, R.P. advised where she lived, exchanged phone numbers with Baker, and thought perhaps they could meet up sometime in the future.

{¶7} On February 20, 2025, Baker arrived at R.P.'s house unexpectedly with a bottle of vodka, tallboy can of beer, and two knives. R.P. let Baker in the house after seeing him looking at her in the window. Upon seeing the knives, R.P. asked Baker what

they were for, and Baker replied, "to protect myself." R.P. noted that this seemed scary but nevertheless allowed him inside.

{¶8} Baker and R.P. began drinking, talking, watching television, and playing music. As the time passed, Baker made multiple attempts to kiss R.P. After the second attempt, R.P. informed Baker that she was not going to have sex of any kind with him. Eventually, R.P. was ready for bed and went to change her clothes in her bedroom. Once R.P. opened the bedroom door after changing, Baker was there.

{¶9} R.P. testified that Baker grabbed her arms, threw her onto the bed, and held her down. Baker pulled down R.P.'s leggings and began to feel sharp pains near her vagina. It was dark in the bedroom, and R.P. did not know what was touching her. R.P. told Baker she needed to use the restroom, got up, and locked herself in the bathroom with her cellphone to call for help. Baker began pounding on the door. Baker then began stabbing the door with a knife shouting "Get out of there. I'm gonna kill you. I want you. I need you."

{¶10} R.P. called two of her siblings, a brother and sister. R.P.'s brother testified that around 8:00 pm, R.P. called screaming that "[Baker] tried to rape me. And if he gets in the bathroom, he's going to kill me." R.P.'s brother could hear a pounding noise over the phone, and he testified that R.P. told him she knew it was a knife because it was coming all the way through the door.

{¶11} Both of R.P.'s siblings called 911, and R.P. stayed in the bathroom. Three officers with the Champion Police Department arrived on scene and could not make contact with anyone at the residence. All of the lights in the house were turned off. Officers

Case No. 2025-T-0080

requested dispatch to call R.P. to let her know police were on scene, and R.P. exited the bathroom to let police inside.

{¶12} R.P.'s older sister arrived at the scene shortly after police and observed two officers interviewing R.P. and approximately five paramedics preparing to escort R.P. to the hospital for a sexual assault kit. No one knew where Baker was, but he was believed to still be inside R.P.'s house as there were no footprints in the snow outside.

{¶13} Paramedics instructed R.P. to get some clothing to take to the hospital. R.P., a police officer, and R.P.'s sister went to R.P.'s bedroom, and Baker was inside completely nude. Baker smelled of alcohol, had slurred speech, was acting aggressively, and was talking about having a "sex-a-thon."

{¶14} Police recovered Baker's two knives—one found on the bed in the bedroom, another in the kitchen—and police observed eleven puncture marks to the bathroom door. Police also found Baker's bottle of vodka, which was completely empty. A receipt indicated that the bottle was purchased that same day at Giant Eagle. Police submitted the underwear R.P. was wearing, the sexual assault kit, and a DNA swab obtained from Baker to the crime lab for testing.

{¶15} At the time the sexual assault kit was performed, R.P. had damage to her vaginal walls, which resulted in bleeding. She also had wrist abrasions, tenderness in the knee, and fresh bruising. The results of the sexual assault kit containing cervical and perianal swabs revealed no DNA foreign to R.P. However, the DNA obtained from the front crotch area of R.P.'s underwear were consistent with R.P. and Baker as contributors.

Case No. 2025-T-0080

{¶16} At the conclusion of the jury trial, the jury acquitted Baker on Count 1 but found him guilty of Count 2 and Count 3. The trial court ordered a pre-sentencing investigation and both Baker and the State filed sentencing memoranda.

{¶17} On October 28, 2025, the trial court conducted a sentencing hearing. After Baker declined allocution, the trial court sentenced Baker to an indefinite prison term of 11 to 16.5 years on Count 2, and a definite prison term of 8 years on Count 3. The trial court ordered the terms to be served consecutively for an aggregate sentence of 19 to 24.5 years in prison.

{¶18} Baker timely appealed from the trial court's sentencing entry.

**The Appeal**

{¶19} On appeal, Baker raises two assignments of error for review:

[1.] The trial court erred in overruling [Baker's] motion for judgment of acquittal because the evidence at trial was insufficient to prove the elements of the offenses beyond a reasonable doubt, in violation of his constitutional rights secured under the Fifth, Sixth, and Fourteenth Amendments and Article 1, Sections 10 and 16 of the Ohio Constitution.

[2.] [Baker's] sentence is contrary to law and in violation of his constitutional rights, secured under the Fifth, Sixth and Fourteenth Amendments, and Article I, Section 10 of the Ohio Constitution.

{¶20} In his first assignment of error, Baker argues that the State failed to present sufficient evidence to sustain a conviction against Baker for kidnapping. Specifically, Baker asserts that the State did not prove he "restrain[ed] the liberty" of R.P. as required under R.C. 2905.01(A). According to Baker, "there was no evidence [R.P.] ever told [Baker] 'no' or 'stop' when they were in the bedroom." Baker further argues that the State's theory, as outlined in its bill of particulars, was confined to the bedroom. Baker further takes issue with the fact that R.P. was the one that put herself in the bathroom.

{¶21} Baker further argues that the evidence was insufficient to sustain his felonious assault conviction because he did not point, waive, or wield the knife towards R.P. as they were in different rooms, and the State did not prove Baker's criminal intent to harm R.P. We disagree.

{¶22} An appellate court reviewing the sufficiency of the evidence examines the evidence admitted at trial and determines whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks*, 61 Ohio St.3d 259, 273 (1991), *superseded by constitutional amendment on other grounds as stated by State v. Smith*,1997-Ohio-355, fn. 4, paragraph two of the syllabus. "'On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *State v. Ross*, 2018-Ohio-452, ¶ 34 (11th Dist.), quoting *State v. Thompkins*, 1997-Ohio-52, ¶ 36 (Cook, J., concurring). Whether the evidence is legally sufficient to sustain a verdict is a question of law which we review de novo. *Ross* at ¶ 34, citing *Thompkins* at ¶ 23. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Noble*, 2021-Ohio-1062, ¶ 42 (11th Dist.), citing *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

**Kidnapping**

{¶23} R.C. 2905.01(A) provides in part that, "[n]o person, by force, threat, or deception . . . shall remove another from the place where the other person is found or restrain the liberty of the other person . . ."

{¶24} "A person's liberty is restrained when the offender limits the victim's freedom of movement in any fashion for any period of time." *State v. Butcher*, 2012-Ohio-868, ¶ 71 (11th Dist.), citing *State v. Totarella*, 2010-Ohio-1159, ¶ 118 (11th Dist.). "Consequently, the element of restraint does not depend on 'the manner a victim is restrained. Rather, it depends on whether the . . . restraint is such as to place the victim in the offender's power and beyond immediate help, even though temporarily . . . [Thus], the restraint involved need not be actual confinement, but may be merely compelling the victim to stay where [she] is.'" *Butcher*, quoting Committee Comments to R.C. 2905.01.

{¶25} Recognizing that the State should be "restricted in its proof to the indictment and the particulars as set forth in the bill [of particulars]," we will first address Baker's argument that the State impermissibly deviated from its theory of the case. *State v. Gau*, 2006-Ohio-6531, ¶ 11 (11th Dist.), quoting *State v. Mille*r, 63 Ohio App.3d 479, 485 (12th Dist. 1989).

{¶26} The State's bill of particulars provided to Baker states in part:

> The Defendant had met the victim a few days prior at a grocery store. He arrived unannounced with a bottle of vodka. After some time, the Defendant attempted to kiss the victim, but the victim refused and stated she did not want a sexual relationship. At some point, the Defendant went into the victim's bedroom but didn't turn the lights on. When the victim entered the room, the Defendant threw the victim on the bed and began to insert his finger or another object into her vagina. The victim was able to get to the bathroom and call for help. The Defendant then attempted to break into the bathroom by stabbing the door with a knife he had.

{¶27} Baker's argument that the State limited its theory of restrained liberty solely to the sexual conduct occurring in the bedroom is not supported by the plain language of the bill of particulars. Although the bill of particulars described the initial assault in the bedroom, it did not expressly limit the State's theory to that conduct alone. Rather, the bill

Case No. 2025-T-0080

broadly explained the sequence of events, including that "[t]he victim was able to get to the bathroom and call for help" and that Baker "attempted to break into the bathroom by stabbing the door with a knife he had." Thus, the State's theory, as disclosed in the bill of particulars, encompassed not only the conduct occurring in the bedroom, but also the bathroom. Nowhere in the bill of particulars did the State represent to Baker that the exclusive basis for restraint of liberty was in the bedroom.

{¶28} Baker then argues that even under the bathroom theory, R.P. chose to lock herself in the bathroom. In other words, Baker's argument is that R.P. confined herself. However, as we have noted, the restraint involved to prove a restraint of liberty "need not be actual confinement, but may be merely compelling the victim to stay where [she] is." *Butcher*, 2012-Ohio-868 at ¶ 71 (11th Dist.), quoting Committee Comments to R.C. 2905.01. In light of the evidence, a rational juror could have found that R.P. was temporarily compelled to remain in the bathroom due to Baker's actions.

{¶29} Accordingly, Baker's conviction for kidnapping was supported by legally sufficient evidence.

**Felonious Assault**

{¶30} R.C. 2903.11(A)(2) provides in part that, "[n]o person shall knowingly . . . [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶31} First, Baker appears to argue that the mere fact that a door separated him from R.P. as he proceeded to stab the door attempting to enter means that R.P. was not in danger of a "deadly weapon" as required under the statute. Rather, he alleges that, due to the barrier, Baker did not point the knife or otherwise wield it towards R.P.

Case No. 2025-T-0080

{¶32} Notwithstanding Baker's argument, being in the same room as the victim is not an element of felonious assault. The State was not required to prove that Baker stood in the same room. Rather, the relevant inquiry is whether the evidence, viewed in a light most favorable to the State, would permit a rational trier of fact to conclude that Baker knowingly attempted to cause physical harm to R.P. by means of a deadly weapon. *Jenks*, 61 Ohio St.3d at 273; R.C. 2903.11(A)(2).

{¶33} It seems axiomatic that R.P.'s presence on the opposite side of the door was the very reason Baker was stabbing through it. A reasonable juror could infer that Baker's repeated stabbing through the door combined with threats to kill her was a knowing attempt to physically harm R.P. with the knife, a deadly weapon.

{¶34} Second, Baker argues that his use of the knife for access to the bathroom where R.P. was hiding is not necessarily evidence that Baker intended to use the knife to cause R.P. physical harm. Baker directs our attention to *State v. Smith*, 2000 WL 110411 (9th Dist. Jan. 26, 2000) for the proposition that Baker's conduct in repeatedly stabbing the door was merely "prepatory" to using the knife to injure R.P. In other words, Baker argues that the evidence adduced at trial does not establish his "intent to harm" and equally supports a mere intention to "frighten" R.P., more akin to aggravated menacing pursuant to R.C. 2903.21(A).

{¶35} We disagree. This court has previously rejected a similar argument in *State v. Figueroa*, 2018-Ohio-1453, ¶ 38 (11th Dist.). The defendant in *Smith* "was not holding the knife in a manner that would permit him to carry out his stated intentions . . . never lunged at [the victim] or took any action beyond a continuation of the verbal tirade that had originally been directed . . . ." *Smith* at *3; *accord Figueroa* at ¶ 38. Baker, on the

Case No. 2025-T-0080

other hand, certainly acted in such a way that would permit him to carry out his stated intentions. We find the State presented legally sufficient evidence. One does not stab a knife through a locked door eleven times, three of which puncturing all the way through to the other side, screaming "I'm gonna kill you" as a pleasantry. Viewed in the light most favorable to the State, a rational juror hearing that evidence could reasonably conclude that Baker acted with intent to harm R.P as Baker's conduct extended beyond a mere verbal tirade. *Figueroa* at ¶ 38.

{¶36} Accordingly, Baker's conviction for felonious assault was supported by legally sufficient evidence. Baker's first assignment of error is without merit.

**Sentencing**

{¶37} In his second assignment of error, Baker argues that the trial court's improper commentary at sentencing that Baker had not shown remorse for his actions render his sentence contrary to law. Although we agree that the trial court's commentary was improper, we find that error was harmless as Baker has not shown prejudice.

{¶38} "Whether a trial court improperly considered an offender's silence at sentencing as demonstrating a lack of remorse falls within the purview of whether a sentence is 'otherwise contrary to law,' and is thus proper for appellate review under R.C. 2953.08(G)(2)(b)." *State v. Gurto*, 2023-Ohio-2351, ¶ 15 (11th Dist.). Baker directs our attention to the Supreme Court of Ohio's decision in *State v. Brunson*, 2022-Ohio-4299. There, the Court held considering a defendant's lack of remorse is an impermissible sentencing consideration where a defendant has pled not guilty and taken the case to trial. *Id*. As the Court explained:

> Because "remorse" is a loaded term and showing remorse
> requires a person to acknowledge that he or she committed

Case No. 2025-T-0080

an offense, a finding of a lack of remorse necessarily goes "to *factual determinations* respecting the circumstances and details of the crime" (emphasis sic), *Mitchell*, 526 U.S. at 328, 119 S.Ct. 1307, 143 L.Ed.2d 424, because it implicates the defendant's role in the crime. For a criminal defendant who pleaded not guilty and took the case to trial, thus maintaining his or her innocence, a finding of a lack of remorse based on the defendant's silence is to use that silence to infer the defendant's involvement in the crime.

*Brunson* at ¶ 81.

{¶39} The purpose of the right to remain silent is "to protect a defendant from being the unwilling instrument of his or her own condemnation. . . ." *Mitchell v. United States*, 526 U.S. 314, 329 (1999). Thus, if a criminal defendant maintaining his or her innocence were required to show remorse, "the defendant 'might reasonably feel compelled to trade the certainty of incrimination by silence for the possibility of incrimination by statement.'" *Brunson* at ¶ 81 quoting *State v. Leach*, 2004-Ohio-2147, ¶ 40 (O'Connor, J., concurring).

{¶40} In this case, Baker pleaded not guilty to all charges in the indictment and maintained his innocence by taking the case to trial. At the sentencing hearing, Baker waived allocution, and the following remarks were exchanged:

> THE COURT: Due to the seriousness of the offense and your lack of remorse, I find that a prison sentence is not inconsistent with the purposes and principles of sentencing. You terrorized this poor woman in her own home. Absolutely terrorized her. She had to move. Fortunately, she has the support of a very close-knit family . . . I sat here looking at you throughout the trial with you showing not one ounce of remorse.
>
> THE DEFENDANT: Because I didn't do anything.

{¶41} Thus, it is clear that the trial court erred in making this consideration. However, we conclude that the error did not affect the outcome of the sentencing hearing. "A defendant's lack of remorse is only one of five factors a trial court considers when

Case No. 2025-T-0080

evaluating the defendant's risk of recidivism under R.C. 2929.12(D)." *Brunson*, 2022-Ohio-4299, at ¶ 85. The trial court also considers the offender's status under state supervision when the crime was committed, the offender's criminal history, the offender's response to sanctions, and the offender's substance-abuse issues related to the offense. *Id*. citing R.C. 2929.12(D)(1) through (4). Further, the trial court is required to consider the seriousness of the conduct, its impact on the victim, and other relevant factors to achieve the purposes and principles of sentencing. R.C. 2929.11(B).

{¶42} In this case, the trial court stated on the record that it considered the purposes and principles of felony sentencing, including R.C. 2929.11 and 2929.12, as well as the relevant seriousness and recidivism factors. The court was aware that Baker had previous misdemeanor and felony convictions, received sentencing memoranda from both Baker and the State, and listened to R.P.'s victim impact statement.

{¶43}    The trial court explained the reason for its sentencing decision in detail:

THE COURT: The Court has considered the case history and statements of counsel and the defendant and the victim. The Court has considered the purposes and principles of felony sentencing, including 2929.11 and 2929.12, including the relevant seriousness and recidivism factors. It's also considered the guidance with respect to this level of offense. Due to the seriousness of the offense and your lack of remorse, I find that a prison sentence is not inconsistent with the purposes and principles of sentencing. You terrorized this poor woman in her own home. Absolutely terrorized her. She had to move. Fortunately, she has the support of a very close-knit family

. . .

[T]he harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of the courses of conduct adequately reflect the seriousness of the offender's conduct. This is a case where I saw a knife having gone through a door with almost 11 stab wounds that penetrated

Case No. 2025-T-0080

that door. This poor woman was locked -- had to lock herself in the bathroom, her own bathroom, because of you. The dangerousness that you pose to the public can't be underestimated. Because you met this woman in a grocery store and then came over to her home unannounced one day and then perpetrated your crimes.

{¶44} Accordingly, we agree with the Supreme Court of Ohio's conclusion in *Brunson* that "[t]hese facts as found by the trial court, even without the lack-of-remorse consideration, demonstrate that the outcome of the sentencing hearing would not have been different." *Brunson*, 2022-Ohio-4299, at ¶ 86. Therefore, Baker cannot prevail on this issue.

{¶45} Baker's second assignment of error is without merit.

## Conclusion

{¶46} For the reasons set forth above, the judgment of the Trumbull County Court of Common Pleas is affirmed.

MATT LYNCH, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2025-T-0080

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

JUDGE ROBERT J. PATTON

PRESIDING JUDGE MATT LYNCH,
concurs

JUDGE JOHN J. EKLUND,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-T-0080